546 F.2d 481
 Elmore CUNNINGHAM et al., Appellants,
v.
Benjamin WARD, Commissioner, New York State Department of
Correctional Services and Robert J. Henderson,
Superintendent, Auburn Correctional
Facility, and their
subordinate
employees,
Appellees.
 No. 377, Docket 76-2068.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 19, 1976.
Decided Dec. 1, 1976.
 
 Stephen M. Latimer, New York City (Michael C. Fahey, Acting Project Director, Bronx Legal Services Corp., New York City, of counsel), for appellants.
 David Birch, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen. of the State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City, of counsel), for appellees.
 Before SMITH, OAKES and TIMBERS, Circuit Judges.
 PER CURIAM:
 
 
 1
 This is yet another in a succession of cases[1] from the United States District Court for the Northern District of New York which comes to us after a sua sponte dismissal of pro se prisoners' complaints. After Lewis v. State of New York, No. 76-2061, 547 F.2d 4 (2d Cir. 1976), we do not need to restate the considerations leading to our determination that dismissal of a nonfrivolous claim is untimely when made before answer and without opportunity to respond on the part of the in forma pauperis plaintiffs, who are entitled to be held to less stringent standards in connection with their pleadings than a plaintiff represented by counsel. Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); Frankos v. LaVallee, 535 F.2d 1346, 1347 (2d Cir. 1976). Our only question here is whether under Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), the complaint is either "wholly insubstantial and frivolous" or the federal claim is "immaterial and made solely for the purpose of obtaining jurisdiction." Id. at 682-83, 66 S.Ct. at 776. While the Northern District judge, Edmund Port, did not make either of these holdings in haec verba, his memorandum opinion indicates that he basically thought this case to have been "without foundation" and "constitutionally unwarranted." We take it that he meant to say that it was wholly insubstantial and frivolous.
 
 
 2
 The complaint, brought pursuant to 42 U.S.C. § 1983, when liberally construed, raises two basic claims, neither of which in our view is frivolous. The first is that a state prisoner must be afforded a hearing on advance written notice of charges, with the right to call witnesses and a written statement of the actions taken and the reasons therefor, all pursuant to Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), when he is put under "keeplock" for periods ranging up to two weeks. "Keeplock," the complaint alleges, is much the same as solitary confinement. The prison inmate is deprived of the ability to move within the prison population, spends 23 hours a day locked in his cell, being allowed out only for an exercise period and a shower, is required to eat in his cell, and is not permitted to attend religious services, use the law library or participate in rehabilitative programs or his normal work assignment. Since evidently even prison inmates in solitary confinement or "segregation" are permitted out for an exercise period for a brief period of time, see Sostre v. Preiser, 519 F.2d 763, 764 (2d Cir. 1975), the principal difference between the conditions of confinement in keeplock and those of confinement in segregation pertain to the physical location of the cells: those who are keeplocked remain in their own cells while those who are in segregation reside in a unit separate from the main prison population, which presumably inhibits their communication with other inmates. There may be, of course, other distinctions which on remand will be made to appear, but on this record these are the principal differences.
 
 
 3
 Wolff v. McDonnell, supra, upon which Judge Port relied, leaves the question open whether "keeplock" is a serious enough sanction to require the procedures necessary for segregated confinement. The Supreme Court stated, 418 U.S. at 571, n. 19, 94 S.Ct. 2963, that its textual decision requiring a limited body of procedural protections applies both in respect to the deprivation of good time and "where disciplinary confinement is imposed." Footnote 19 goes on to refer to "(t)he deprivation of good time and imposition of 'solitary' confinement . . .." Id. The final sentence states: "We do not suggest, however, that the procedures required by today's decision for the deprivation of good time would also be required for the imposition of lesser penalties such as the loss of privileges." Judge Port evidently equated keeplocking with the Supreme Court's "loss of privileges." We need not determine whether the equation is a sound one and cannot do so on the factual record before us. Footnote 19 in Wolff distinguishes between "disciplinary confinement" and "loss of privileges"; arguably, keeplocking is a form of "disciplinary confinement," even though it is not " 'solitary' confinement" as that term is generally understood. Baxter v. Palmigiano, 425 U.S. 308, 96 S.Ct. 1551, 1560, 47 L.Ed.2d 810 (1976), suggests that the question whether even loss of privileges warrants Wolff procedures is still an open one. Our court has agreed. Mawhinney v. Henderson, No. 76-2028, 542 F.2d 1, 3-4 (2d Cir. 1976).[2]
 
 
 4
 The second nonfrivolous constitutional argument made is that confinement to one's cell under keeplocking conditions as punishment for minor infractions is disproportionate to the offense and therefore violates the Eighth Amendment prohibition against cruel and unusual punishment. Here the offenses for which plaintiffs allege that they were keeplocked for periods of up to ten days ranged from carrying Thermos bottles of hot water to carrying an unwrapped briefcase, and in the case of one plaintiff keeping nude and other pictures on his cell walls. The test has been stated to be whether the punishment is "related to some valid penal objective and substantial deprivations are administered with due process." Landman v. Royster, 333 F.Supp. 621, 645 (E.D.Va.1971). Individual circumstances weigh heavily in the ultimate determination. See Wright v. McMann, 460 F.2d 126, 132 (2d Cir. 1972). Under the allegations of the complaint, the infractions which precipitated the keeplocks in this case are probably Class C misbehavior under the New York Department of Correctional Services Standards of Inmate Behavior (1975). In any event, the gist of the complaint is that if the conduct is sufficiently minor that no hearing under the Wolff procedures is warranted, it is sufficiently minor that a punishment such as keeplocking becomes disproportionate and thereby cruel and unusual. The State does not meet the dilemma this argument seemingly poses; perhaps it can do so on remand.
 
 
 5
 Since neither of the constitutional claims is wholly insubstantial and frivolous, and since there is no contention that the federal claim was asserted purely for purposes of obtaining federal jurisdiction, Bell v. Hood, supra, we remand in accordance with the previous authorities cited for further proceedings.
 
 
 6
 Judgment reversed and remanded.
 
 
 
 [1]
 Lewis v. State of New York, No. 76-2061, 547 F.2d 4 (2d Cir. 1976), Mawhinney v. Henderson, No. 76-2028, 542 F.2d 1 (2d Cir. 1976); Burgin v. Henderson, 536 F.2d 501 (2d Cir. 1976); Frankos v. LaVallee, 535 F.2d 1346 (2d Cir. 1976)
 
 
 [2]
 In United States ex rel. Walker v. Mancusi, 338 F.Supp. 311, 314 (W.D.N.Y.1971), aff'd, 467 F.2d 51 (2d Cir. 1972), prison inmates who were held in their cells 23 hours a day, as here, but in a separate facility though not deprived of newspapers, magazines, radio and commissary activities, were held entitled to the procedural protection of Sostre v. McGinnis, 442 F.2d 178, 194-99 (2d Cir. 1971) (en banc), cert. denied, 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 (1972). See also United States ex rel. Robinson v. Mancusi, 340 F.Supp. 662 (W.D.N.Y.1972), where Judge Curtin said that denial of mess hall and work privileges (as here) involved " 'a harsh reduction of the privileges typically afforded inmates of general population,' " id. at 663, quoting Carter v. McGinnis, 320 F.Supp. 1092, 1093 n. 1 (W.D.N.Y.1971). Keeplocking here appears to be a somewhat lesser deprivation than the limited segregation in Walker, since the 23-hour-per-day confinement is in one's own cell, but does involve, as did Robinson, deprival of mess hall and work privileges